Michael, we'll hear from counsel. Mr. Killian? Yes, sir, Your Honors. Good morning. You may proceed. Good morning. This case is about the first and the most basic rule of statutory interpretation, that Congress says what it means and means what it says in statutes. Union Pacific is asking the Court to apply the ordinary meaning of the RRTA and to hold that Congress really meant what it said when it said that employers and employees in the railroad industry should pay taxes only on remuneration that 1. is paid in a form of money and 2. that is paid for service that a railroad directs and supervises. The government in this case rejects the ordinary meaning of these words. It thinks that the words are historical, maybe legalese, but either way, meaningless. It assumes that Congress included these words by accident in the 1930s, and this is all part of the government's effort to erase these words out of the code. In its view, everything is taxable under the RRTA because the phrase any form of money remuneration really means all remuneration, and because the phrase or the requirement that payments be for services a railroad directs and supervises actually includes anything a railroad gives to its employees. This approach that the government has goes against not just the first and most basic rule of statutory interpretation, but it goes against every familiar rule of statutory construction. And that's because, in our view, the government's case is not really about statutory tax. It's about policy, the IRS's policy preference that the RRTA should be treated the same way as FICA. But in every material respect, these statutes are different. Your Honors, railroads, as you know, often get unique statutes. In the U.S. Code, they're treated differently from the rest of American industry all the time. And indeed, in the 1930s, the RRTA and FICA were created as two different programs. RRTA funds a defined benefit pension that applies only to railroad employees, whereas FICA funds a social welfare annuity for the rest of the American economy. And there are significant operational differences between an annuity and a defined benefit pension. There's one I want to highlight. Let me ask you this. Yes. If money remuneration only means money, why would there be exceptions for certain in-kind benefits? Your Honor, all of the exceptions cover at least one form of money. It is the case that the exceptions on our interpretation all cover one form of money. On the government's, they would cover things that are money and things that aren't money. In other words, we think the exceptions just focus the court back on the meaning of any form of money remuneration. So let's take, for example, the E-12 exemption because that's the one that most courts have focused on and have thought that this is the one. For example, what, counsel? E-12, which is the exemption for incentive stock options. Most courts have focused on that, and notably the Fifth Circuit has held that unless the word money is meaningless, the E-12 exemption is meaningless as well, this sort of dueling superfluities that the Fifth Circuit has concocted. We believe that's wrong and that the Fifth Circuit misunderstood how incentive stock options operate in practice. The important thing is that an employee exercising an incentive stock option can receive cash from his employer at the same time he receives stock at the exercise. In addition, it's clear that when the employee sells that stock on the market in a market transaction, the employee is going to receive cash as well. So what the E-12 exemption does is it says to the extent the employer receives cash at exercise or at sale, that cash is not taxed as a form of money remuneration. And as we explained in our brief, we can walk through a lot of the exceptions, Your Honor. But I do think, and if there's any in particular you want to discuss, I'm happy to do so. But all of the exceptions cover at least one form of money, and that's what makes none of them superfluous and focuses us back. There could be cases that involve money or cash that it would cover, is that what you're saying? I'm sorry, Your Honor. There could be cases that involve cash. Yes, exactly, exactly. There could be a case under each of those exceptions. Well, they're not meaningless. I'm sorry? They're not meaningless. Exactly. None of the exceptions. Sorry, don't get over here with that. I appreciate that, Your Honor. Most people think I talk too loud, so. None of the exceptions are superfluous or meaningless. When you give the word money, it's ordinary meaning. And that ordinary meaning, Your Honors, is this. It is the stuff that is conventionally used by a range of individuals as a medium of exchange in general commerce, which serves as a measure of value for commercial transactions. You know, the original regulation defining compensation said it meant all remuneration in money or in something which may be used in lieu of money, script and merchandise orders, for example. Exactly. Which is earned by an individual. Correct. So, I mean, it seems to me that that makes your point. Yes, and the word used, the verb used in that sentence is not used in a colloquial sense. It means used as a means of exchange, like script was used throughout the United States in the Great Depression as a medium of exchange. I think what they meant to say was the term compensation means all remuneration in cash or in something which may be used in lieu of cash, because that is script and merchandise orders, for instance, because otherwise it's kind of self-referential. I understand your point. You see what I'm saying? Yes. I mean, I think it makes your point, but it makes it only if you sort of rewrite it in your mind to say money equals cash in this regulation. Isn't that right? That's correct, Your Honor. The original regulation, yes. But we think that the way Congress used the phrase not just money but any form of money, the statutory language was referring to more than just cash on hand. I understand. Yes. So, maybe in the regulation the word money took sort of that more narrower connotation. It makes it even more confusing, of course. Only moderately, but I don't think there is much confusion here. The dictionaries, the case law from the late 1800s forward to present are clear on what the ordinary meaning of the word money is. And stock does not satisfy that definition. We think that Judge Mannion in the Seventh Circuit last month in his dissent got this exactly correct. You cannot use stock to buy groceries. You can't use it to pay rent. This court won't let us use stock to pay the filing fee for a notice on appeal. And it is clear that the IRS prohibits individuals or corporations from paying their income taxes in stock. They won't let you use scrip either, though. That's correct. But scrip has ceased to be a form of money. That's kind of, in our view, the genius of the phrase that Congress wrote in the statute here, that while the legal meaning of the phrase any form of money remuneration is clear and was set in 1935, Congress understood that as the economy, you know, as times change, what is in fact used as money may change. So scrip isn't used any longer, but now credit cards and debit cards are. Those new things are treated as forms of money under the RRTA. Back to the incentive stock option exception. Yes. You say that involves money and that's why. But isn't it sort of a very rare and very de minimis amount of money? It's only when there's fractional shares, that sort of thing? Fractional shares or bonuses. So the way the IRS has set up the regulations for incentive stock options, an employer may pay a cash bonus to an employee along with each share when at exercise. So I would say it's up to the employer's discretion how they want to set up their plan. I can't tell you whether it's rare or infrequent. It just seems unlikely that Congress would set up that exception with the idea in mind that there's these very de minimis, fractional amount of cash that might come with the stock option. I think, Your Honor, though, it is more unlikely that Congress included this exception and then meant to retroactively change the accepted meaning of the phrase any form of money. And this gets to the point that an exception. That's kind of my point. If stock clearly is not included, why would there be this exception for incentive stock options? Well, because Congress was trying to make incentive stock options taxed the same way under all statutes. So under FICA, you will get the tax, excuse me, when you receive the share and the money, none of that is taxed. Under the RRTA, the share portion isn't taxed because it's not included within the scope of any form of money, but the cash portion should not be taxed as well. That creates equality between the statutes. It may be rare within the confines of the RRTA, but when looked broadly, the 2004 amendments added a verbatim exception to the RRTA and to FICA because Congress was attempting to provide uniformity across all of the tax rules. It is our burden, nevertheless, Judge Grunder, I think, to show only that there is at least a circumstance where there is money that is transferred, and thus it is not rendered superfluous. But I'll go a step further. Even if the first portion of E-12 were superfluous, that would not be a reason to change the meaning of any form of money. That gets to the canon against implied repeal, which, again, we've briefed, and I think Judge Mannion got correct in the Seventh Circuit dissent. When Congress is acting to narrow the tax base, which is clearly what the E-12 exemption is doing, it is exempting from taxation something that it thought was previously taxed. It is completely backwards to say that that act of accepting somehow expanded the underlying tax base. The only clear and manifest intent of Congress in 2004 was to narrow the scope of taxation, not to expand the scope of taxation. There is a second requirement in the statute here, Your Honor, unless the Court has further questions about the form of money requirement. I'll move to the second requirement, which is that there be a purpose, that it's not just payments for money but that are payments for services that are rendered to the railroad. And the RRTA, again, unlike FICA, defines service. Service is defined as something that the railroad supervises and directs. One thing that it is clear railroads do not supervise and do not direct is collective action. That is a fundamental principle of all of labor law and, in particular, the Railway Labor Act. In this case, ratification payments were paid in cash, admittedly, but not for service rendered to the union. They were paid in order to have the union accept the collective bargaining agreement. Think of it, Your Honors, as consideration in a contract. By paying a ratification payment, which was asked for, requested by the union, then it brought to a close a very contentious bargaining process. That was consideration, therefore, for the union to end its right to continue negotiating and potentially holding up the collective bargaining agreement. And, indeed, these payments were paid at ratification. They were lump sums. They were the same for all of the union members, regardless of their craft, whether they were an engineer or whether they were a lineman. Everyone got the same flat $2,000. And so we think that this is, again, a straightforward application of the definition direct and supervised. The government, like the district court, completely ignores the RRTA's special definition of service. Instead, just cites a litany of cases under FICA, which, again, doesn't define service, doesn't define employment as something that is controlled by the employer. Those FICA cases, and just like FICA itself on this, is completely irrelevant for that reason. I'd like to direct the court to a provision in the RRTA, which I think ties together very nicely the two arguments that we've put in play here, and that's Section 3231E2C. And if your honors have the red brief, it's in full in text at page 88. This is a provision on successor employers. We cited this in our opening brief. We discussed it in our reply brief. What the RRTA says when there's an instance of successor employers, it says, with an express cross-reference, use the successor employer's rule from FICA, but with two important substitutions. Congress directs that the word employment, the FICA-specific word, be substituted with the RRTA-specific word service. And in addition, Congress directs that the word remuneration from FICA be substituted with the RRTA's different definition of compensation. The only reason Congress would go to the length of directing to use FICA rules but to substitute the two key words that are at issue in this case is because Congress understood there's a difference. There's a difference between what FICA defines as wages and what the RRTA defines as compensation. There's a difference between what FICA calls employment and what the RRTA calls service. The government has no explanation for why these additional provisions are in 3231E2C. Again, we put it in our opening brief. It's not even cited in the government's response brief. I would like, Your Honors, I think, to make one more point before I get to a conclusion, unless the court has further questions, and that is the ordinary meaning in this case does not open up a loophole into the RRTA. This is an undercurrent of Judge Posner's decision and I think an undercurrent of the district court decision below. To read the word money with its original meaning will not end the RRTA or the program or be some massive loophole that railroads would take advantage of for several reasons. First, employees prefer to be paid in money because they can't use stock to buy the things that they want for their daily life, but they can use money for that. And in addition, reading the word form of money as it would take its ordinary meaning, if they were paid entirely in stock, then employees would see their pension benefits go down, and employees don't want that either. Shareholders, similarly, will not approve a company like Union Pacific to have a massive buyback on a regular basis of its shares that would be necessary in order to pay the 50,000-plus employees of Union Pacific all with stock. It's just not practically going to happen. Shareholders won't approve it. And I think the reality is demonstrated by the facts of this case. We are seeking a refund of only the tiniest fraction of Union Pacific's RRTA payments. Between 1991 and 2007, Union Pacific paid more than $20 billion in RRTA taxes. The tax rate under the RRTA right now is 30.4 percent of every dollar paid to an employee. Contrast that with FICA, which is only 12.4 percent. The tax rate is more than two and a half times as great under the RRTA as it is under FICA. And under that tax rate, Union Pacific paid $20 billion between 1991 and 2007. The refund for stock is $50 million in this case. That's one quarter of one percent of all of the RRTA taxes that Union Pacific paid in that 18-, 17-year period. This is clearly not a massive loophole. We believe that Congress's intent for the RRTA is plain throughout the face of that statute and that this court should reject the IRS's attempt to turn the RRTA into FICA. They are different things. And that this court should therefore reverse the district court's conclusion that FICA and RRTA have been unambiguously identical from the very beginning. This is an unambiguous statute. Is that what you're saying? Yes, Your Honor. Well, there are a lot of briefs here trying to explain what it means. Does that not mean that there must be some difficulty in trying to determine what it means? No, Your Honor. I respectfully disagree. We believe that the volume of pages that have been spent on this is because the IRS is continually shifting positions about what this statute means. The district court agreed with you that it was unambiguous, but in another way. Well, the Seventh Circuit in its decision last month, I believe, even all three of the judges found that the meaning of the word is clear. It did not find ambiguity. It saw no reason to get into deference. Just because it's difficult to understand doesn't mean it's ambiguous. I think that's correct. There's a lot of reasons people have incentives to change the definitions and make an argument where they can, and this is one of those cases where we think the ordinary meaning is very clear, and it's the government who has been evasively trying to— Given the vast disagreement amongst courts, didn't the Fifth Circuit get it right when it said it was ambiguous? Oh, no, not at all, Your Honor. The Fifth Circuit made several fundamental errors in its analysis. First, the Fifth Circuit, reading historical texts, believed that evidence of in-kind payments was evidence of a money payment, even though all the sources that the court cited used in-kind and money, not interchangeably, but to show contrast with each other. So the court sort of gerrymandered ambiguity from the 1930s, but fundamentally the Fifth Circuit messed up because it misunderstood the E-12 exemption for incentive stock options. That court believed that you had to make money meaningless in order for E-12 to make sense, and as I explained to Your Honor earlier, that's simply wrong. E-12 makes sense on both interpretations. Unless the court has further questions, I'll reserve my three minutes for rebuttal. Very well. Thank you. We'll hear from the government. Ms. Delsol, how do you pronounce your name? Ellen Delsol. Very well. You may proceed. Good morning. May it please the Court. I'd like to begin with the stock compensation issue, which focuses on the phrase, what does any form of money remuneration mean? I'd like to urge this Court to follow its sister circuits. Two circuits have already held in BNSF, and the Seventh Circuit recently in Wisconsin Central held that these types of payments in stock, and specifically in those cases involving non-qualified stock options, are subject to the Railroad Retirement Tax Act. And I think given that those two courts have reached that conclusion, and then also the CSX Court in the Middle District of Florida recently reached the same holding, it's really impossible to square with the Railroad's view that this statute is unambiguously narrow. The courts, like the District Court here and Wisconsin Central, have either clearly held that money remuneration is broad enough to include stock, or they've held that the any form of is broadening, and that the other exceptions make the statute ambiguous. And I think if the statute's ambiguous, the government has to prevail here under Chevron because the regulations encompass the payments here, as the BNSF Court held, or if it's broad enough to, on its face, include stock, as Judge Posner concluded in Wisconsin Central, and the District Court did here, then the government must prevail. And against that weight of authority, concluding that the statute is unambiguously narrow really doesn't make sense. And I think as a practical matter, as Judge Posner pointed out, it doesn't make sense, because money really is the economic equivalent of stock. These plans basically have these sell-to-cover options where the employees could, on the day they were able to exercise their option, which is the taxable event, could ask that their stock be sold and that payment be remitted to the company for the stock plus the taxes, and then they got cash. So effectively, because these were publicly traded stock that could be easily converted to stock, and in most of the cases, the employers would do that for them. I think the record's a little murky whether the employees had to use their own brokers or the employee did it here, but there's definitely, at page 62 of the appendix, an example of that sort of sell-to-cover option being available to the employees here. So I think they definitely could get cash immediately, and also money... is the most common way of investing money today and what people do with their money to invest. So I think it certainly can be read on its face as having the broader meaning. And as Judge Posner also emphasized, it really doesn't make sense to treat stock differently from money, because that would just create an incentive for railroads to put more and more of their compensation in stock to decrease the tax base, which would interfere with the remedial purpose of the statute. And notably, the only other place this same statutory language appears is in the Railroad Retirement Act, which is the corresponding benefit statute. And there, in the Railroad Retirement Act regulations in 20 CFR section 2011.2a, the Railroad Retirement Board regulations construe the same language as broad enough to include payments and commodities, which would include stock. And I think to hold that it's more narrow in the tax context than in the benefits context would create an imbalance that, again, would undercut the remedial purpose. And the railroad has tried to differentiate the statute from FICA, and they are separate statutes, but they're aimed at the same remedial purpose. And virtually every circuit, as the Seventh Circuit recently recognized, has gone back and, in the context of looking at these two statutes, has emphasized their parallel purposes. Didn't the original regulatory definition of compensation support the Railroad's position in this case? Well, I don't think it does, Your Honor. The current regulation, which governs most of the years, treats the Railroad Retirement Act compensation as broad as FICA wages. So for those years, the same analysis that would apply to FICA of all remuneration applies. For the earlier years, it said money or anything that can be used in lieu of money. And certainly, as Judge Posner pointed out, in his opinion in the Seventh Circuit, stock, at least today, can be used in lieu of money. And I think the same was true then. I don't think that's true. I can't buy groceries or a car with stock. And you can't take a check written out to you and give it to the grocery store either. I probably could in my hometown. Well, but in my city of Washington, D.C., that would be very unlikely that they would take that. Well, this is the Eighth Circuit. But at the same time, you might have to... You know, you can go to the broker and get cash for your stock. I could go to a brickyard and get cash for bricks. So what? I mean, almost anything is for sale. There are a lot of liquid goods that can't be... that you wouldn't call money. Well, I think the point of this, the reason the regulation treats it as all remuneration and looks at this language as broad is, first of all, the statute itself doesn't say that the tax is only on money. It says any form of money remuneration and that any form of language is broadening. And the statute actually carves out a whole lot of non-cash exceptions. And I think the Railroad Council, Mr. Killian, was not accurate in stating that these all have some cash component. I think that the analysis that the Supreme Court applied in quality stores in looking at the fact that there was exception for some types of severance payments, including that severance payments were covered by FICA, generally, also applies here. I think you're going down two different tracks here. I think perhaps what Judge Arnold was suggesting, that if we were to find that it was ambiguous and grant Chevron deference, as you suggested, if we look at the pre-1994 regulation, wouldn't they be entitled to refunds for those early years? In our view, no, Your Honor, because I think stock, because it could be immediately sold, and in most of these railroad arrangements... But BRICS can be immediately sold too, and you wouldn't argue BRICS are the same as cash or same as money. Well, I think that the line might be murkier in that regard, but specifically Congress has carved out as exceptions so that the tax doesn't apply all sorts of things that are non-cash benefits. BRICS aren't usually something the employers give to their employees, but things like theater tickets, sports tickets, birthday cake, as Judge Posner cited, or the Christmas turkey, that sort of thing. All those things are carved out of the statute as exceptions. Section 3231E5 includes the exceptions of things, everything that's excluded from income tax under Section 132. And if you look at the regulations under Section 132, specifically Treasury Regulation 1.132-6, that actually spells out all those examples and excludes those from income tax, and what the statute itself does is excludes those things from any form of money remuneration. And so I think the fact that Congress has carved out all these things is an exception that is a suggestion that money remuneration is very broad, and it does include any compensation for services. And I think that's not... So something that can be used in lieu of money is something that can be sold for value that gives you money, I think, is a reasonable exclusion, or certainly something that's easily exchangeable in commerce like stock is. And I don't think we have to reach the question of the harder-to-sell things because stock is an easy-to-exchange thing, and in many instances these employees never even saw the stock, they just saw the cash because they immediately sold the stock and paid the tax. So I think that that supports the conclusion that even if the statute is ambiguous, that you get to... Even under the old regulation, it would include stock. And certainly if you look at the statute as a whole, that reading makes sense in light of the statutory language because, as I said, these exceptions really don't... They don't include examples where it's only non-cash benefit. Those fringe benefits are one. There are certain things under E-5, like Employee Achievement Awards under Section 74, that can only be given in non-cash forms. And then the meals and lodging are... There's an exception only when those are in non-cash forms. So I think the statutory structure actually supports the district court's holding here, which would mean the government would fail on all issues. But even if it's ambiguous, certainly everything after 1994 would be subject to tax under the new regulation. And I think the in-lieu of money... I mean, a script in a company store is something that could only be used in one place. It's certainly not the equivalent of money in the sense that, you know, you could do the same thing, like buy a house with it, that you could with money. You couldn't go to New York and go shopping. You could only use it in your local company store, which would be, like, the equivalent of, say, a grocery store gift card today. And I think those sort of script and merchandising orders examples were given were saying that things that you could use as a substitute for money that would give you the buying power of money are things that would be money remuneration for those earlier years. And I would just emphasize, in looking at the statute as a whole, that the history of the statute also supports a broader reading because when that phrase, money remuneration, was first introduced in 1935, there was an exception for free transportation. And I think, additionally, just the fact that numerous courts have emphasized that the FICA and Railroad Retirement Tax Act have a parallel purpose. In fact, Congress has repeatedly aligned these statutes all indicate that these statutes are aligned. In fact, this court has recognized, in the benefits context, in Lindquist v. Bowen, the alignment of the statutes. So I think there's certainly the weight of this court's sister circuits, the fact that there are these situations where there are non-cash exceptions that are carved out. And just going to the incentive stock options briefly, there is a possibility that cash can accompany an incentive stock option, but in Section 422, which is the incentive part and the regulations thereunder, it makes pretty clear that those things, the cash accompanying the option, is not part of the option, and that is subject to income tax. And I think there was not any reason to think that there would have been confusion about that being subject to employment tax that would have been reason for E-12 to have been added. The situation was that Congress had carved out these incentive stock options as not being an income tax-triggering event, and it didn't do anything about employment tax in the employment tax context. And the IRS looked at it and said, well, then those must be taxed for employment tax purposes. And then Congress came back and said, no, no, we mean that exception to apply for employment tax purposes also. And the legislative history makes clear it's trying to clear that up. And so it added the exception to FICA for incentive stock options, and it added the same exception to the Railroad Retirement Tax Statute. And if it had been clear that stock is never a form of money remuneration, there would have been no reason to do it. There's just as much chance of there being cash with a non-qualified stock option as cash with an incentive stock option. And if anything, the law is clearer about the effect of the cash with the incentive stock option because it's spelled out under the incentive stock option provision. So I don't think the Fifth Circuit got that wrong. So I think that is correct. And I hope I've answered your question regarding the earlier regulation, because I do think the fact that something can be converted to money means it can be used in lieu of money. But if there are further questions on that, I'd be happy to answer that before moving on to the ratification. And are there any other questions on the stock issue? And if not, I'll move on to the ratification payment issue. On that issue, I think the term ratification payments is really a misnomer for what these payments were, because nothing in the agreements themselves actually calls them ratification payments. Rather, they fall under the heading wages in these collective bargaining agreements, which are basically employment agreements. And there are good examples of this. They're on page 475 and 540 of the Supplemental Appendix, where they're under the category wages, and there's a lump-sum payment provision and then the hourly wage provisions. And both of these provisions are agreed upon as part of this contract that governs the term of employment. These aren't payments for ratification of the contract. It is true that for either the lump-sum payments or the general wage increases to apply, the contract has to be ratified, but the ratification was not what the payment turned on. There's no requirement that the employees have to vote for the ratification or have done anything to make the ratification happen to get these payments. Whether the agreements spell out they had to have been employees, they had to have worked for a certain amount of time, they have to have worked enough to earn vacation time, or worked a certain number of hours, or been employees during a certain window or on a certain date. And there are additional examples cited on page 68 of our brief, if the Court would like to look at more examples. But I think that the idea that there's some sort of different extra effort, extra provision of control over service under the Railroad Retirement Tax Act, and FICA is really, I think, not accurate. Section 3231D, which is what the railroad site, in that regard, does define when an employee is in service of the employer. And it talks about that as when the employer has the authority to control or supervise the employee's work. But that's talking about the work, not the entering of an employment contract, which is essentially what these ratification agreements are. And I think under 3231D in the Railroad Retirement Tax Act really reflects the same language as the regulation in FICA, which talks about who is an employee also. In fact, there are parallel regulations in FICA and the Railroad Retirement Tax Act. Under FICA, it's 31.3121D1, and under the Railroad Retirement Act, it's 31.3231B1. But they're both entitled who are the employees, and these regulations talk about the employee being someone over whom the employer has the right to exercise control of the work. But the employer can never control whether the employee will enter into an employment contract, which is what the railroad is basically trying to use this language to say. It's the control over the work. And FICA in the statute defines an employee as someone who is an employee of common law, and then it picks up the exact same language as the Railroad Retirement Tax Act has in the statute that describes an employee of common law as one whose work is under the supervision of the employer or under the control of the employer. So I think this control notion really is not different under the Railroad Retirement Tax Act and FICA. And neither statute defines what is remuneration for services precisely, nor do their regulations. But there's a weight of case law on that that lays out the argument, that lays out that what is considered remuneration for services is anything arising out of the employment relationship, anything that's paid on account of the employment relationship. And in that context, the Supreme Court, going back to Naroko in the 1940s, and literally dozens of cases in all the circuits have consistently held that remuneration for services includes any payments arising out of the employment relationship, including lump sum payments under collective bargaining agreements for back pay. This court has held it in the context of, in the Lane Processing and Mayberry cases, Lane Processing involved a situation where the employer had gone bankrupt and the employees were given an enticement  if they continued to work. And these distributions of stock were held to be remuneration for employment, even though the employer had by then ceased to exist. And similarly, in Chicago, Milwaukee, and CSX, the same reasoning was applied to Railroad Retirement Tax Act cases in the federal circuit. And so I think that reasoning definitely applies here and there's no basis for distinguishing the Railroad Retirement Tax Act cases. And just one final point I think I'd like to make sure that I address is this successor employees language in 3231E2C where the Railroad pointed out that the term compensation substituted for remuneration in applying the FICA approach to the employee context. And the reason for that difference is not because any form of money remuneration is necessarily different from all remuneration for employment, but because there are different exceptions from the general rule. So both statutes have their general rule about what is compensation and then they have exceptions. And most of those are parallel, but not all of them are. And the fact that there are some different exceptions is reason for having that different language. But it doesn't mean... Also, I'm more and more persuaded that maybe Mr. Killian was right when he said basically the government's argument is a policy argument. Well, I think as a matter of policy, as Judge Posner pointed out, it does make sense because we're talking about $50 million and... To what extent will that override the meaning of the word? Well, I don't think it overrides the meaning of the words, but I think if you look at the phrase any form of money remuneration, first of all, money... I actually looked at a lot of dictionaries in looking at this phrase and a lot of case law interpreting money. And I would say that generally money is a noun. This use of it as an adjective is unusual. What does Brian Garner say? And Brian Garner says, when it's used as an adjective like this in legal context, that it is mere surplusage, that it's something that is, like money damages, simply a legalese, redundant modifier for another form of monetary... some sort of monetary term in legal context. And the Fifth Circuit recognized that as well in BNSF. So if you look at any form of money remuneration, it could reasonably be read as just any form of remuneration. Additionally, when money is defined as an adjective, and like I said, it's not very often, it generally adopts... those dictionaries use the broader definitions, like wealth or capital generally, or assets that are readily convertible to cash. And so in those instances, that would support a broader reading that would include stock as well. Well, I don't... I'm sorry to keep harping on this, but the IRS didn't take that position, I don't think, originally. Well, originally... That money remuneration was redundant. Well, we certainly argue that in the BNSF case in the Fifth Circuit, that it was, and I think that's actually picked up in the Fifth Circuit's opinion, that it was a superfluous legalese redundancy. We suggested that that was one reasonable reading of the statute in that case. I'm talking about your original regulation which defined compensation. Well, I think... Well, Your Honor, first of all, I would point out that for years, the railroads... In fact, in this case, for ten years, at least a decade before the year's in issue, the railroads paid the tax, didn't question that they were liable for it, and paid the refund claim, and there has been no questioning that this language did include stock for decades. And so it's long been... It's only the railroads that have recently come up with a new argument that this is not money remuneration. I think they read the statute and the prior regulation as including stock because they paid those taxes without seeking refunds for years, and they certainly had legal counsel who could have looked at this. You thought it was like script, huh? I think they did, and I think that's a reasonable reading, as I've explained, because something in lieu of money could be liquidated for money. Okay. I was concerned because it seemed to me there was a kind of unexplained shift in the attitude. Well, I think, if anything, it's an unexplained... That's not unexplained, though. They don't want to pay. Right. I think the reason this has come up is because they've come up with this argument that hadn't been raised before. Thank you. Thank you very much, Your Honor. Very well. Your Honors, the railroads brought this issue up in 1991 because that was the first time ratification payments had been paid and because it was not until the mid-1980s when Congress amended the RRTA to change it from a system that imposed tax on a monthly basis to tax on a yearly basis. And when you switch the tax ceilings from monthly to annual, stock suddenly matters because the annual compensation is much greater than the monthly compensation in stock. It's an economically material difference, only in the early 90s, late 80s, when this suit originally was filed. So the government's case is really a case that the phrase any form of money remuneration means any form of remuneration. The word money, according to the government, is meaningless. The new regulation that the government adopted in 1994, which it adopted out of the blue, there was no legislative change. The only thing it pointed to was the 1974 amendment of the RRTA to include the new Tier 1. This new regulation does not attempt to define the word money. This regulation is perfectly circular. It says the RRTA and FICA will be treated the same except where they're different. Well, that doesn't get you anywhere. And it is only in the context of some later litigation that the IRS has made its position clear that it thinks that this money is so meaningless that it is no longer one of the differences between the statutes. Ms. del Sol argued that stock should be treated like money because it's just as liquid as money, taking up the same theme that Judge Posner had in the Seventh Circuit. Well, there are a lot of things that are easy to sell. In this court, in the United States Supreme Court, have talked about promissory notes, have talked about foreign currency, have talked about treasury bonds, and all of those in a variety of contexts have been held not to be money because they are not mediums of exchange. That's the clear ordinary meaning of the phrase. Ms. del Sol talked about the word convert. She said that stock could be converted into money. That is a colloquial use of the word convert. Stock can be sold for money. The word convert, when used with money, is like what happened in the United States before Nixon took us off the gold standard in 1971. You could convert a United States dollar into a fraction of an ounce of gold. That's what convert means in this context. And the government is cheating when it takes convert in its colloquial sense as a synonym for sell. Those are not the same things. Ms. del Sol also talks about the cross-references. And she says... By that, I mean the exceptions to the RRTA. There's a list of these exceptions, most of which operate by cross-reference. And when you look at the cross-reference section, there are money items and there are non-money items. And she says there's cross-reference must have meant to pull in not just the money items, but also the non-money items. But all we need to show, as I explained to Judge Grunder before, is that pulling in the money items matters. Congress doesn't have to go line by line and only cross-reference the sub-sub-subsections that refer to money. Instead, it just pulled in the entire section, money and non-money alike. So the government began... If I may finish my point, Your Honor. Finish your statement. Thank you. The government began by asking you to follow other courts. Well, the other courts, while they have gone the way of the government, have contradictory rationales. One court holds it's ambiguous. One court holds it's clear our way. Another court holds it's clear the other way. You can't follow three courts that are running all over themselves just to follow the IRS. Are there any circuit courts that have rolled your way? Uh, the... No. But what I meant by that, Your Honor, is that we have the District Court in Texas that went our way, and the Seventh Circuit. I believe all three of the judges... If we went your way, we'd be creating a circuit split. Yes, you would, Your Honor. And one that, you know, we think is justified and warranted given the correct interpretation of these laws. This is not an ordinary tax case. It's not about tax shelters. It's not about economic substance. This is about statutory interpretation. If these words are meaningless, what other words in the Internal Revenue Code would be meaningless next? Final question to you, and you don't have to answer. How do we mere mortals... How dare we mere mortals disagree with Judge Posner? Ha ha. Uh, I am confident this Court will find the courage to do so. Thank you, Your Honors. Well, the case is submitted, and we will take it under consideration. Consult Judge Mangin.